1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

LOREN K. COOK,

11
                    Plaintiff,

12
        v.

13
KENNETH S. APFEL, Commissioner of
Social Security Administration,

14
                    Defendant.

15
16

CASE NO.    **C05-5589RJB**

REPORT AND
RECOMMENDATION

Noted for June 16, 2006

17
18
        This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. §

636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W.</u>

19
<u>v. Weber</u>, 423 U.S. 261 (1976).  This matter has been fully briefed, and after reviewing the record, the

20
undersigned recommends that the Court affirm the administration's final decision.

21
                              <u>INTRODUCTION</u>

22
        Mr. Cook was born in 1968 and is currently 38 years old.   He received his GED and completed a

23
course at BCTI, the Business Computer Training Institute, in 1997.   He has past experience working as a

24
box packager, laborer, and agricultural worker.  However, by age 31, he had an extensive criminal history

25
and has spent most of his adult life incarcerated. Tr. 406-17, 609.  He last worked in 1997 as a laborer for

26
the Hydroglass Mill. Tr. 407.  He worked there for almost one year, but alleges he had to quit because of

27
the stress and the noise in the mill. Tr. 407.

28
        Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)

on June 23, 2000. Tr. 239-43, 561-3. He alleged disability since September 15, 1998 due to joint swelling, heart murmurs, hearing loss, migraines, depression and anxiety attacks. Tr. 251. The applications were denied initially and after consideration by an Administrative Law Judge ("ALJ"). Mr. Cook filed a timely complaint in this Court. In response to plaintiff's assertions that the ALJ had failed to properly consider the evidence, the Commissioner agreed to certain allegations and thus, the parties agreed the ALJ made certain errors. Despite plaintiff's assertions that the matter should be reversed and benefits should be awarded, the court adopted Magistrate Judge Mary Alice Theiler's recommendation and remanded the matter for additional consideration. See C03-2411Z.

Judge Theiler specifically found and recommended the following: (i) remand was appropriate so that the ALJ could clarify the status of Drs. Moore, Whitehill and Schneider and properly weigh the opinions of all the physicians of record; (ii) the ALJ provided clear and convincing reasons for rejecting plaintiff's testimony; (iii) the ALJ should reconsider plaintiff's Residual Functional Capacity ("RFC"); (iv) the ALJ should specifically state whether he rejects the statements offered by plaintiff's witnesses, and, if so, the reasons for the rejection; and (v) a Vocational Expert should be called to testify and the ALJ should ensure that the hypothetical posed to the expert encompasses the appropriate limitations. Judge Theiler further recommended that the matter be considered by a different ALJ on remand.

Pursuant to the court's order, the matter was sent back to the administration and assigned to a different ALJ. The hearing on remand occurred on May 3, 2005 before the Honorable Thomas P. Tielens. Tr. 693-733. On June 17, 2005, the ALJ issued a decision which concludes:

> After careful consideration of all the evidence, it is concluded the claimant retains the residual functional capacity to return to his prior work, and alternatively , is capable of making an adjustment to other jobs existing in significant numbers in the national economy. These conclusions are based on findings concerning his age, education, work experience, and residual functional capacity. For these reasons, he is not under a disability as defined in the Social Security Act and Regulations. Because he is not disabled, he is not entitled to Disability Insurance Benefits and is not eligible for Supplemental Security Income payments based on the applications protectively filed on June 23, 2000.

Tr. 604.

After the Appeals Council declined review, plaintiff filed a new complaint with this court challenging the denial of his applications for benefits. Specifically, plaintiff contends: (1) the ALJ erred by ignoring the disabling limitations identified by Dr. Moore and rejecting the opinions of two other doctors simply because they relied upon Plaintiff's subjective complaints; (2) the ALJ improperly rejected the lay

1  witnesses' written statements; (3) the ALJ failed to properly evaluate plaintiff's residual functional capacity

2  ("RFC"); and (4) the Vocational Expert's testimony about Plaintiff's ability to work is unsupported by

3  substantial evidence and contrary to law.  Defendant counter-argues that the ALJ applied the proper legal

4  standards and that the administrative findings and conclusions were properly supported by substantial

5  evidence.

6                                               DISCUSSION

7          This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the proper

8  legal standard and there is substantial evidence in the record as a whole to support the decision.  Hoffman

9  v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a

10  reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389,

11  401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a

12  preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772

13  F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the

14  Court must uphold the Secretary's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

15  **B. THE ALJ PROPERLY ASSESSED THE MEDICAL OPINIONS**

16          The ALJ is entitled to resolve conflicts in the medical evidence.  Sprague v. Bowen, 812 F.2d 1226,

17  1230 (9th Cir. 1987).  He may not, however, substitute his own opinion for that of qualified medical

18  experts.  Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).  If a treating doctor's opinion is

19  contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific

20  and legitimate reasons" supported by substantial evidence in the record for doing so.  Murray v. Heckler,

21  722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute

22  substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating

23  physician."  Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996).  In Magallanes v. Bowen, 881 F.2d 747,

24  751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of  a treating physician's opinion

25  because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied

26  on laboratory test results, contrary reports from examining physicians and on testimony from the claimant

27  that conflicted with the treating physician's opinion.

28          Here, plaintiff contends the ALJ improperly ignored Dr. Moore's 1998 finding of "marked"

limitations in the ability to respond appropriately to and tolerate the pressures and expectations of a normal work week with the Vocational Expert stated would preclude employment.  Plaintiff further alleges the ALJ erred by rejecting Dr. Whitehill's opinion and Dr. Schneider's opinion because they relied upon plaintiff's subjective complaints and plaintiff was also found to have exaggerated his responses to certain tests.

On remand the court directed the ALJ to properly assess the opinions of Dr. Moore, Dr. Whitehill and Dr. Schneider.  In his written opinion the ALJ summarized, discussed and/or noted the records and opinions from Kaiser Permanente,  Dr. Whitehill, Dr. Schneider, Dr. Biebuyck, Lower Columbia Mental Health Center, Dr. Kirkpatrick, Dr. Lonian, Dr. Bigley and Dr. Moore.  The ALJ noted that Dr. Moore, like Dr. Whitehill was an examining physician (Tr. 607).  Similarly at the hearing, the ALJ addressed the status of Dr. Whitehill, Dr. Schneider, and Dr. Moore, as directed by the court (Tr. 697, 713).

Plaintiff's challenge to the ALJ's consideration of the medical evidence concerns his assessment of plaintiff's mental health impairments.  Dr. Moore, Dr. Whitehill, and Dr. Schneider are each psychologists.  Dr. Moore and Dr. Whitehill were considered examining physicians by the ALJ.  Their treatment of Mr. Cook related to his request and need  for General Assistance (state welfare benefits).  Plaintiff testified that he was evaluated by Dr. Moore and/or Dr. Whitehill bi-annually as required.  Dr. Schneider was also considered to be an examining physician, and Dr. Schneider's evaluation was in the context of vocational rehabilitation.  The only other mental evaluation of record by a physician was performed by Dr. Biebuyck, a psychiatrist, whom the ALJ considered a consulting physician (Tr. 605), but in actuality he was also an examining source equal in stature to the three psychologists.

After summarizing many of the medical opinions, the ALJ concluded and wrote:

Medical expert  Dr. Bigley testified the records reveal the claimant has a hearing impairment which makes work in a noisy environment very difficult, a past history of dizziness, a history of Raynaud's syndrome affected by very cold temperatures, a sleeping disorder for which he takes medication for which tends to make him drowsy during the day, and a leaky heart valve which is not symptomatic. Therefore, the medical evidence of record reveals the claimant has the medically determinable impairments of a sleep disorder, Raynaud's syndrome, hearing loss, depression and a personality disorder, and headaches.  These impairments cause vocationally relevant limitations and are considered to be "severe."

In addition to the impairments listed in the application, the representative also listed Meniere's disease, a heart condition, leg problems, a history of head injury, hypoglycemia, and memory, attention, and concentration problems (Exhibit 14E).  At the hearing and in other documents, the claimant has also alleged end organ damage from diabetes, a leaking heart valve, back pain, social problems, anger problems, and posttraumatic stress problems

from incarceration. A thorough review of the records reveals these problems are non-severe impairments, components of other impairments, or are not medically determinable impairments.  Further , these conditions are not supported by the testimony of the medical expert.

[Omitted]

The medical reports and the testimony of the medical experts reveal the claimant suffers from severe impairments but the impairments do not meet or medically equal criteria listed for any disorder in any section fo Appendix 1.  His physical impairments do not cause any exertional limitations but do cause some non-exertional limitations.  His mental impairments cause mild restrictions in his daily activities, moderate difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence, or pace.  He has suffered no episodes of decompensation.

Tr. 608.  The ALJ posed two hypothetical questions to the Vocational Expert.  With regard to mental impairments, the first hypothetical included limitations to simple one, two, three step work and limited interaction with the public and coworkers, and a person that did best with less supervision.   Tr. 725-726.  The second hypothetical asked the Vocational Expert to consider a person "unable to persist at work for 40 hours a week, five days a week, eight hours a day ...." Tr. 727.   The Vocational Expert answered the first hypothetical by stating that such a person could do certain jobs, including car wash attendant, dishwasher, grocery bagger, electrode cleaner, and semi-conductor bonder.   No employment was identified consistent with the limitations posed in the ALJ's second hypothetical.

The record supports the ALJ's assessment of Mr. Cook's mental impairments and the first hypothetical posed to the Vocational Expert.   While Dr. Moore and Dr. Whitehill rated plaintiff's ability to respond appropriately to and tolerate the pressures and expectations of a normal work week as a "marked" limitation.  Dr. Schneider, Dr. Biebuyck and the Medical Expert did not share this opinion or assess this category of social mental impairment that severely.  Dr. Schneider, like Dr. Biebuyck, did not prepare a report that rates this social factor in the same terminology or rating system used by the state agency evaluators.  Dr. Schneider discussed plaintiff's resentfulness,  resistance to authority, as challenges to working  in a demanding work environment with authority figures being perceived as too powerful.  Dr. Schneider concluded:

The work environment will be critical.  This individual is very sensitive to authority and sensitive to demand.  He is a very resentful individual who is quick to react.  He states that he needs a job with minimal supervision.  This is very realistic.  He can function best in a job in which he is given an assignment and allowed to work independently.  It appears that he is capable of completing tasks if he is interested in doing so.

Tr. 416.  Dr. Biebuyck was more concise in his report, simply stating, "It is believed that with adequate

1   treatment of his anxiety symptoms, these should not be an impediment for his completing a normal

2   workweek of dealing with the usual stress encountered in competitive work." Tr. 425.

3        Discussing the mental health evaluations, the ALJ rejected many of Dr. Schneider's assessments

4   and tests which supported a severely limited individual.  The ALJ explained that Dr. Schneider's test

5   results showed plaintiff's propensity to exaggerate his symptoms and that Dr. Schneider's more severe

6   ratings relied on plaintiff's subjective complaints.  More importantly, the ALJ noted that despite these

7   ratings, Dr. Schneider reported, as noted above,  that Mr. Cook would be capable of working in an

8   environment that allowed him to work independently and with less supervision, which is exactly what the

9   ALJ assessed and exactly what he asked the Vocational Expert to consider in his first hypothetical.

10       It is clear to this court  that the ALJ considered the medical opinions related to Mr. Cook's mental

11   health.  The ALJ properly considered and evaluated the opinions of Dr. Moore, Dr. Schneider and Dr.

12   Whitehill when he concluded plaintiff's mental impairments only caused mild restrictions in his daily

13   activities, moderate difficulties in maintaining social functioning and mild difficulties in maintaining

14   concentration, persistence, or pace.   The ALJ was entitled to find the opinions of  Dr. Biebuyck, Dr.

15   Schneider (to a limited degree) and the Medical Expert more persuasive than the opinions and assessments

16   made by Dr. Moore and Dr. Whitehill.   The ALJ decision is properly supported by substantial evidence in

17   the record.

18   **B.      THE ALJ PROPERLY EVALUATED THE LAY WITNESS EVIDENCE**

19       Plaintiff argues the ALJ improperly rejected the statements offered by Karen Cook, plaintiff's

20   mother.  Plaintiff's Opening Brief at 15.   The ALJ has a special duty to fully and fairly develop the record

21   and to assure that the claimant's interests are considered.  Brown v. Heckler, 713 F.2d 441, 443 (9th Cir.

22   1983).  The ALJ can reject the testimony of lay witnesses only if s/he gives reasons germane to each

23   witness whose testimony s/he rejects.  Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) Dodrill v.

24   Shalala, 12 F.3d  915, 919 (9th Cir. 1993).

25       Judge Thieler directed the ALJ to specifically state whether he rejects the statements offered by

26   plaintiff's witnesses, and, if so, the reasons for the rejection.  In accordance with the court's order ALJ

27   Tielens wrote:

28       The Administrative Law Judge has further considered the third party witness statements of
         Lynn Lawmaster (Exhibit 19E) and Karen Cook (Exhibit 20E), and have found these

statements generally credible to the extent they are reporting their opinions on the extent of the claimant's limitations which he demonstrates to them. They are not knowledgeable in the medical and/or vocational fields and thus are unable to render opinions on how the claimant's mental and physical impairments affect his overall abilities to perform basic work activities. Further, given the claimant's tendency to exaggerate his symptoms and limitations, their assessments are drawn into question. Furthermore, these opined limitations are not based on any objective evidence nor are they supported by the totality of the medical records.

Tr. 609-610.

The ALJ reasonably considered the statements of Karen Cook. In other words, the ALJ provided adequate reasons to reject her opinion that Mr. Cook was totally disabled and not able to perform certain work in the national economy. The ALJ relied on his review of the medical evidence and the testimony of the vocational expert. Plaintiff's argument relies on the premise that the ALJ erroneously discounted the opinions of Drs Moore, Whitehill and Schneider (Plaintiff's Opening Brief at 16), but as discussed above the ALJ did not err in his assessment of the medical evidence.

C.    *THE ALJ PROPERLY EVALUATED PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY*

If the ALJ cannot determine whether a claimant is disabled based on a claimant's current work activity or on medical facts alone, and a claimant has a severe impairment(s), a review is made of the claimant's residual functional capacity ("RFC") and the physical and mental demands of the work a claimant did in the past. 20 C.F.R. § 404.1520(e).

In this case, the ALJ concluded:

After careful consideration of all the evidence of record and giving the claimant every possible benefit of doubt, the Administrative Law Judge finds the claimant does not have any exertional limitations whatsoever. He does have non-exertional limitations and in this regard, he should never climb ropes, ladders, or scaffolds, should avoid hazards and exposure to extreme cold. He should not engage in work activities that require fine hearing and should be allowed to use ear protection for loud noises. He should have limited interaction with the public and co-workers and would work best with less supervision. Given the possible side-effects of his medications, headaches, he is limited to simply one-two-three step work tasks. This residual functional capacity is consistent with the medical record of evidence or with the testimony of the claimant and is therefore adopted as the best evidence of the claimant's overall ability to perform basic activities.

Tr. 610.

Mr. Cook argues the ALJ's RFC assessment was made in error because he did not include several aspects or symptoms of his medical limitations. For instance, plaintiff argues the ALJ failed to incorporate his headaches, which cause him the need to lay down, or his sleepiness, caused by his medications. Plaintiff again argues the ALJ failed to take in and properly assess the medical evidence which includes limitations

1    that were not included in the ALJ's RFC assessment.

2           As discussed above the ALJ did not err in his assessment of plaintiff's mental or physical condition.

3    After reviewing the record, this court does not find any error in the ALJ's evaluation of the medical

4    evidence and the RFC, which is consistent with the ALJ's assessment of the medical evidence, for Mr.

5    Cook.

6    **D.   *SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S FINDING THAT MR. COOK IS ABLE TO PERFORM PAST WORK, AND, ALTERNATIVELY, OTHER WORK IN THE NATIONAL ECONOMY***

7           Plaintiff argues the ALJ erred when he relied on the Vocational Expert's testimony.  Plaintiff argues

8    the Vocational Expert's testimony could not be relied upon because the ALJ's hypothetical posed to the

9    expert failed to include all of plaintiff's limitations.

10          Here the ALJ relied on the Vocational Expert's testimony to conclude: (1) plaintiff retained the

11   ability to return to his past work, and alternatively, (2) plaintiff is capable of performing other work within

12   the national economy.

13          The Ninth Circuit recently wrote:

14                At step four, claimants have the burden of showing that they can no longer perform
15          their past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e); *Clem v. Sullivan*, 894
            F.2d 328, 330 (9th Cir.1990). Once they have shown this, the burden at step five shifts to
16          the Secretary to show that, taking into account a claimant's age, education, and vocational
            background, she can perform any substantial gainful work in the national economy. 20
17          C.F.R. §§ 404.1520(f) and 416.920(f). *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir.2000).
            Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to
18          make the requisite factual findings to support his conclusion. SSR 82-62. See 20 C.F.R. §§
            404.1571 and 416.971, 404.1574 and 416.974, 404.1565 and 416.965.  [Footnote omitted]
19                This is done by looking at the "residual functional capacity and the physical and
            mental demands" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(e) and
20          416.920(e) The claimant must be able to perform:
                  1. The actual functional demands and job duties of a particular past relevant job; or
21                2. The functional demands and job duties of the occupation as generally required by
            employers throughout the national economy. SSR 82-61. This requires specific findings as
22          to the claimant's residual functional capacity, the physical and mental demands of the past
            relevant work, and the relation of the residual functional capacity to the past work. SSR 82-
23          62.

     *Pinto v. Massanari*, 249 F.3d 840, 844-845 (9th Cir. 2001).   At step-five the burden of proof shifts to the
24
     Commissioner to produce evidence of other jobs existing in significant numbers in the national economy
25
     that Plaintiff could perform in light of his age, education, work experience, and residual functional capacity.
26
     *See* Tackett v. Apfel,180 F.3d 1094,1099 (9th Cir. 1999); Roberts v. Shalala, 66 F.3d 179, 184 (9th Civ.
27
     1995).  In Tackett, the court noted "there are two ways for the Commissioner to meet the burden of
28
     showing that there is other work in 'significant numbers' in the national economy that claimant can

perform: (a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, subpt. P, app. 2." Id.

Plaintiff's allegation that the ALJ erred when he relied on the Vocational Expert's testimony is without merit.  Plaintiff's argument is again based on the allegation that the ALJ failed to properly take into account the medical evidence, particularly the opinions of Drs. Schneider, Moore, and Whitehill which suggest that Mr. Cook suffers from more severe mental impairments than found by the ALJ.  As explained above, the ALJ did not err in his analysis of the medical evidence.  The ALJ is not obligated to accept all of a claimant's proposed limitations, as long as the ALJ's findings are supported by substantial evidence.  See Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).  Accordingly, the ALJ properly relied on the Vocational Expert's testimony.

CONCLUSION

Based on the foregoing discussion, the Court should affirm the Administration's final decision denying plaintiff's application for social security disability benefits.  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **June 16, 2005**, as noted in the caption.

DATED this 23rd day of May, 2006.

 */s/ J. Kelley Arnold*_____
J. Kelley Arnold
U.S. Magistrate Judge